# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cv-668-JDR-MTS

KASEY KREHBIEL,

*Plaintiff,*

*versus*

C&C CHIMNEY & AIRDUCT CLEANING, LLC, *doing business as* COMFORT CLASS; RICHARD TATTERSHALL,

*Defendants.*

## OPINION AND ORDER

Plaintiff Kasey Krehbiel purchased an HVAC system from Defendants C&C Chimney & Airduct Cleaning Service and its owner, Richard Tattershall. Dkt. 16 at 2.[1] After the system failed twenty separate times in the span of a few months, Mr. Krehbiel disputed the quality of the system and its installation. *Id.* at 3-12. Mr. Krehbiel sued Mr. Tattershall and C&C for violating the Oklahoma Consumer Protection Act, fraud, and identity theft. Dkt. 16 at 17-22. Mr. Krehbiel sued only C&C for breach of contract, breach of warranty, breach of the duty of good faith, and violating the Magnuson-Moss Warranty Act. Dkt. 16 at 12-16. Mr. Tattershall moved to dismiss all claims against him, and C&C moved to dismiss all claims except for breach of contract and breach of warranty. Dkts. 19, 20. The Court grants Defendants' motions to dismiss the claims for identity theft and denies them in all other respects.

---

[1] All citations use CM/ECF pagination.

No. 25-cv-668

I[2]

Mr. Krehbiel purchased a new, residential HVAC system from C&C. Dkt. 16 at 2-3. Prior to closing the sale, Mr. Tattershall represented that C&C would provide Mr. Krehbiel with a heating and cooling unit that C&C technicians had been trained to install and showed him photos of the same system, which Mr. Tattershall stated was at C&C's training facility. *Id.* at 2. Mr. Krehbiel alleges that Mr. Tattershall's representations were false and that Mr. Tattershall knew they were false at the time. *Id.* at 3.

Mr. Krehbiel agreed to purchase the units, and C&C began to install the HVAC system on November 11, 2024. *Id.* During installation, a C&C technician informed Mr. Krehbiel that "the crew had failed to install sensors, without which the units would not start" and would require repair. *Id.* at 4. The technician also stated that "the crew members had never installed the HVAC unit models that Mr. Krehbiel had purchased." *Id.* Mr. Krehbiel alleges that C&C made several additional errors during installation, including failing to install new foundations, propping up portions of the units with PVC pipe, using duct board to seal extra space resulting in one of the units overheating, and improperly installing a part causing water to backup into an HVAC unit, among other issues. *Id.* at 5-6.

Although the HVAC system was able to start, it failed twice on November 20, 2024. *Id.* at 4. Mr. Tattershall came to Mr. Krehbiel's home to inspect the unit and determined that the installation crew had used components for natural gas heating, but the Krehbiel's home used propane gas. *Id.* The HVAC system sustained "significant" damage from this failure. *Id.* at 5. Nevertheless, C&C completed installation, and Mr. Krehbiel paid the balance owed for the purchase of the system. *Id.*

---

[2] The following section summarizes the allegations as they are set forth in Mr. Krehbiel's amended complaint [Dkt. 16]. The Court accepts these facts as true solely for purposes of this order. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

No. 25-cv-668

By December 3, the HVAC system had failed an additional five times. *Id.* at 6. Mr. Krehbiel informed C&C of the issue, and Mr. Tattershall responded by extending the warranty by an additional year and promising a partial refund. *Id.* C&C, Mr. Tattershall, and third-party contractors attempted to repair the HVAC system, which continued to fail, but these attempts did not solve the issues. *Id.* at 6-7. Other third-party contractors either refused to work on the system to avoid their companies' risk of liability or informed Mr. Krehbiel that the HVAC system had been improperly installed. *Id.* at 7.

An additional problem arose when, in November and December 2024, a former C&C technician and another contractor each highlighted a "potential carbon monoxide danger" from the furnace units. *Id.* In response, Mr. Krehbiel and his family limited their use of their home during the winter months and used space heaters instead of their HVAC system. *Id.* at 7-8.

In early 2025, Mr. Krehbiel filed complaints with the Better Business Bureau and the Consumer Protection Unit of the Oklahoma Attorney General's office. *Id.* at 9. Although the parties began settlement negotiations, they could not reach an agreement. *Id.* at 9-10. On August 29, 2025, without Mr. Krehbiel's agreement, C&C purchased a warranty in Mr. Krehbiel's name for the HVAC system from American Home Shield and stated that the new warranty "fully and completely supplant[ed] [C&C's] warranty obligations." *Id.* at 10. On October 4, 2025, AHS called Mr. Krehbiel to inform him that no payments had been made on the account and to demand payment. *Id.* at 11. In communications with the Better Business Bureau, C&C stated that the AHS warranty was "the last additional offer to resolve all claims of the Krehbiels." *Id.* (emphasis removed).

Mr. Tattershall has moved to dismiss all claims against him, and C&C has moved to dismiss all claims except those for breach of contract and breach of warranty. Dkts. 19, 20.

3

No. 25-cv-668

## II

Mr. Tattershall first moves to dismiss the amended complaint in its entirety under Rule 8 of the Federal Rules of Civil Procedure. Dkt. 19 at 2. His Rule 8 argument is without merit. Although Mr. Tattershall argues the amended complaint fails to provide a "short and plain" statement of the claims as required by the rule, he has pointed to no case law to support the idea that Mr. Krehbiel's amended complaint is too long or convoluted. *Id.* The Court concludes that the amended complaint, which is twenty-two pages long, intelligibly lays out Mr. Krehbiel's claims for relief.

Mr. Tattershall's and C&C's Rule 12 argument fares somewhat better. To survive a motion to dismiss, Mr. Krehbiel's amended complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. In other words, the Court must determine whether, taking all well-pleaded allegations as true, the amended complaint provides a "reason to believe that [Mr. Krehbiel] has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Court will first consider the motions to dismiss the shared claims against Mr. Tattershall and C&C, then consider Mr. Tattershall's immunity argument on the claims against him, and last consider Mr. Krehbiel's claims against only C&C.

## A

Mr. Tattershall and C&C both move to dismiss the shared claims against them for violating the OCPA, fraud, and identity theft. Starting with Mr. Krehbiel's OCPA claims, Mr. Tattershall and C&C argue that Mr. Krehbiel did not plead allegations of "misrepresentations, omissions, and other deceptive practices" with sufficient particularity, thereby requiring dismissal.

4

No. 25-cv-668

Dkt. 19 at 6-8; Dkt. 20 at 10-12. To be liable under the OCPA, a defendant must have (1) "engaged in an unlawful [or deceptive] practice," which (2) "occurred in the course of the defendant's business," (3) the consumer plaintiff must have "suffered an injury in fact," and (4) "the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 2000 OK 92, ¶ 31, 19 P.3d 839, 846. Defendants dispute only the first element. A party commits an unlawful practice when it represents "that the subject of a consumer transaction is of a particular standard, style or model, if it is of another," *see* Okla. Stat. tit. 15, § 753.8, or a deceptive practice when it makes a "a misrepresentation, omission, or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." Okla. Stat. tit. 15, § 752.13.

Defendants argue that Mr. Krehbiel has not specifically identified a misrepresentation that would qualify as an unlawful or deceptive practice. Dkt. 19 at 7. But the amended complaint alleges that "the units in the photos were the ones that [Mr. Tattershall's] technicians had been trained to install" and that "the units in the photos were the 'same exact'[3] units that Mr. Krehbiel would be purchasing." Dkt. 16 at 2. Mr. Krehbiel alleges that these "assurances were false at the time they were made" and that Mr. Tattershall "knew that his assurances were false at the time they were made." *Id.* at 3. The amended complaint also provides the time, date, and location where the statements were made.[4] These allegations sufficiently state at least one

---

[3] Mr. Tattershall raises a separate argument about the interpretation of "same exact" units, namely that Mr. Krehbiel "knew or should have known that [Mr.] Tattershall did not mean 'same exact' units to mean the units shown at the training facility in the photo, but rather units of the same type and model." Dkt. 19 at 8. The Court disagrees with his interpretation. But even using that interpretation, Mr. Krehbiel separately alleges that Mr. Tattershall misrepresented that C&C's technicians were trained to install the units in question, which could serve as an independent basis for the claim. Dkt. 16 at 2.

[4] Mr. Tattershall's motion seems to argue that the misrepresentation in question was made by a C&C technician and not Mr. Tattershall. Dkt. 19 at 7. But the amended *(footnote continues)*

No. 25-cv-668

misrepresentation that could reasonably be expected to deceive or mislead a person to their detriment. Mr. Krehbiel has adequately alleged a deceptive trade practice under the OCPA.

Second, Mr. Tattershall and C&C both argue that Mr. Krehbiel's amended complaint must plead the existence of a misrepresentation with particularity to state an OCPA claim. Dkt. 19 at 7; Dkt. 20 at 26. But this argument suffers from two problems. First, it is unclear whether Federal Rule of Civil Procedure 9(b), which requires pleading with particularity to allege fraud or mistake, extends to an OCPA claim based on an alleged misrepresentation. But even if it does, Mr. Krehbiel's amended complaint specifies that the alleged misrepresentations were made at Mr. Krehbiel's home on or around September 23, 2024, in a personal meeting between him, his wife, and Mr. Tattershall, and further stated their content and alleged Mr. Tattershall's knowledge of their falsehood. Dkt. 16 at 2. Mr. Krehbiel's amended complaint thus pleads these allegations with particularity. Mr. Krehbiel has stated a claim under the OCPA against both Mr. Tattershall and C&C.

B

For Mr. Krehbiel's fraud claims, Mr. Tattershall and C&C both argue that Mr. Krehbiel cannot assert his fraud claim because it is not sufficiently independent of his asserted breach of contract claim against C&C. Dkt. 19 at 9-10; Dkt. 20 at 10-13.[5] On the first point, it is true that a party cannot recover for both breach of contract and fraud for "identical facts," and "the claims must be sufficiently distinct in order for a party to simultaneously maintain claims for both breach of contract and fraud." *Transcon. Gas Pipe Line Co.,*

---

complaint alleges that the technician alerted Mr. Krehbiel to the prior misrepresentation, not that the technician made the misrepresentation himself. Dkt. 16 at 4.

[5] Defendants also argue that Mr. Krehbiel has not stated his claims involving Mr. Tattershall's statements with particularity, *see* Dkt. 19 at 9-10, but this Court has already determined that Mr. Krehbiel pleaded the alleged misrepresentations with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). *See* § II-A, *supra.*

No. 25-cv-668

*LLC v. Kibby Welding, LLC*, No. 18-cv-0445-CVE-FHM, 2019 WL 3754211, at *2 (N.D. Okla. Aug. 8, 2019).

Here, the alleged misrepresentations that form the basis of Mr. Krehbiel's fraud claim were prior to the contract's formation. Dkt. 16 at 2; Dkt. 21 at 8. Mr. Krehbiel has alleged that Mr. Tattershall fraudulently induced him to enter into the contract to purchase the HVAC unit. This fraud claim is independent of Mr. Krehbiel's breach of contract claim. Because the two claims are not based on identical facts, they can proceed together.[6]

Separate from its shared arguments with Mr. Tattershall, C&C ends its discussion of the fraud claim by arguing that Mr. Krehbiel's fraud allegation is in part based on a failure to install "promised HVAC units in his residence, in breach of C&C's alleged promise to install *only* specified units" and argues that "he contracted to purchase *only* the HVAC units" in C&C's training facility. Dkt. 20 at 17 (emphasis in original). As discussed previously, the Court understands Mr. Krehbiel's statement as referring to Mr. Krehbiel's desire for those models instead of specific units. *See* § II-A n.3, *supra*. But even if C&C's interpretation were correct, Mr. Krehbiel has also stated that Mr. Tattershall and C&C misrepresented the C&C installers' experience with the models in question, which would provide an independent basis for a fraud claim. *Id.*

Insofar as C&C requests dismissal of a "particular fraud claim," the Court cannot do so. Mr. Krehbiel pleads a claim for fraud generally, and assuming C&C's interpretation of his amended complaint is correct, he has still pleaded other bases supporting that claim. *Id.* The Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement

---

[6] Although it is true that Oklahoma law precludes double recovery when a party pleads fraudulent inducement to enter a contract that was later breached, the election of a remedy is not required at the pleading stage. *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 (10th Cir. 2008).

No. 25-cv-668

of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The Court is still "under a duty to examine the complaint to determine if the allegations provide for relief on any possible legal theory." A. Benjamin Spencer, 5A Fed. Prac. & Proc. (Wright & Miller) § 1357 (4th ed.). Courts dismiss claims, not the legal theories supporting them, and so the Court will not dismiss a specific legal theory where there are others that could support Mr. Krehbiel's fraud claim.

As none of the arguments raised by either Mr. Tattershall or C&C support dismissal of Mr. Krehbiel's fraud claims, the Court denies the motions to dismiss them.

C

Defendants next argue that Mr. Krehbiel has not pleaded sufficient facts to indicate that Mr. Tattershall's purchase of the American Home Shield warranty using Mr. Krehbiel's information constituted identity theft under Oklahoma law. Dkt. 19 at 11-13.[7] A person commits identity theft when he or she "use[s] with fraudulent intent the personal identity of another person, living or dead, or any information relating to the personal identity of another person, living or dead, to obtain or attempt to obtain credit or anything of value." Okla. Stat. tit. 21, § 1533.1.

The Court agrees with Defendants. Although Mr. Krehbiel pleads that Mr. Tattershall used Mr. Krehbiel's personal information to secure a new warranty for C&C in Mr. Krehbiel's name to use in settlement negotiations, he does not allege that Defendants had fraudulent intent. Dkt. 16 at 10-12. The purpose of an identity theft statute is to protect individuals from "classic identity theft," such as "where a defendant has used another person's identification information to get access to that person's bank account" or

_____

[7] Defendants also argue that Mr. Krehbiel did not plead his identity theft claim with particularity. Dkt. 19 at 11. But Rule 9(b) does not clearly apply to a state-law identity-theft claim. Fed. R. Civ. P. 9(b) (requiring a party to state its claims with particularity to allege "fraud or mistake.").

8

"dumpster diving, computer hacking, and the like." *Flores-Figueroa v. United States*, 556 U.S. 646, 656 (2009) (analyzing the federal identity theft statute, 18 U.S.C. § 1028A(a)(1)). But Mr. Tattershall did not dive into Mr. Krehbiel's dumpster looking for his personal information, nor did he hack Mr. Krehbiel's computer, nor did he seek to access Mr. Krehbiel's personal accounts or indeed take anything from him. Dkt. 16. All Mr. Tattershall is alleged to have done is use the information to which he had legitimate access to sign Mr. Krehbiel up for a warranty, disclose the policy's existence, and provide Mr. Krehbiel with the policy's information, all as part of a settlement offer. *Id.* at 10-12. The Court is not convinced that the plain language of the statute actually covers this circumstance, nor that the Oklahoma Legislature intended to include purchasing an asset to be offered in a settlement agreement under the banner of "identity theft."

But even assuming that Mr. Tattershall's actions *could* fall under the statute, to plead fraudulent intent, a party must plead facts that permit a strong inference that the defendant acted with the intent to defraud or otherwise harm the plaintiff through a false statement. *See United States ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*, No. 16-cv-00268-CMA-NYW, 2018 WL 1375792, at *2 (D. Colo. Mar. 19, 2018). If Mr. Krehbiel had accepted the offer of a replacement warranty from AHS as sufficient, it is not obvious that anything would be improper about the transaction. Rather, he would be receiving support, repairs, or replacement of the HVAC system from AHS, even as C&C paid for the costs involved. To show that Mr. Tattershall had fraudulent intent, Mr. Krehbiel would need to plead facts indicating that Mr. Tattershall made the offer without intent to follow through thereupon or for some other fraudulent purpose. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1259 (10th Cir. 2003) (holding that "one can sue for fraud [in a settlement agreement] when the promisor made the promise with no intent to honor it."). Although Mr. Tattershall ultimately did not pay the AHS invoice, Mr. Krehbiel had already refused to accept the AHS policy as a means

No. 25-cv-668

to settle their dispute. Dkt. 16 at 12. It is not fraudulent to decline to pay for a warranty offered as part of a settlement negotiation after that offer has been rejected.

Simply asserting that Mr. Tattershall was attempting to "manipulat[e]" Mr. Krehbiel into settlement is not sufficient to state that Mr. Tattershall offered the warranty with fraudulent intent. Dkt. 16 at 12. In a sense, all negotiations seek to manipulate the other side into accepting an offer—without more, a mere desire to induce acceptance by a counterparty cannot be fraudulent. At most, Mr. Krehbiel has pleaded facts that provide a strong inference that Mr. Tattershall wanted to speed settlement negotiations, not that he intended to defraud Mr. Krehbiel by means of the purchased warranty. The Court grants Mr. Tattershall's motion to dismiss the identity theft claim.

## D

Separate from his substantive arguments against the individual claims, Mr. Tattershall cites two Oklahoma statutes for the proposition that he cannot be held personally liable for Mr. Krehbiel's claims because he serves as C&C's manager. Dkt. 19 at 5. These statutes are Okla. Stat. tit. 18, § 2022, which precludes liability for a member or manager of a limited liability company "solely by reason of being such member or manager" and Okla. Stat. tit. 12, § 682.B, which reads:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation . . . [t]his provision includes, but is not limited to, claims based on vicarious liability . . . nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct . . . not within the scope of their role. [8]

---

[8] Okla. Stat. tit. 12, § 682.C extends the same protection to LLC members.

Okla. Stat. tit. 12, § 682.B "prohibits suits based *solely* on" a defendant's status as an officer, shareholder, or LLC member, and "does not prevent a person from being sued directly for his own conduct." *Dennis v. Good Deal Charlie, Inc.*, No. 20-cv-00295-GKF-JFJ, 2021 WL 815841, at *6 (N.D. Okla. Mar. 3, 2021) (emphasis added). It likewise "does not preclude imposition of personal tort liability on an officer, director, or shareholder for the person's acts outside the scope of his or her role as an officer, director, or shareholder." *Id.* And Oklahoma courts have held that "corporate officers may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors." *Smoot v. B & J Restoration Servs., Inc.*, 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814.

Mr. Tattershall argues that Okla. Stat. tit. 12, § 682.B and Okla. Stat. tit. 18, § 2022 preclude the claims against him because "[a]ny action" he took was an "act[] authorized and processed by" C&C, and so he cannot be individually liable. Dkt. 19 at 6. But Mr. Krehbiel's OCPA and fraud claims are based on the allegation that Mr. Tattershall made assurances that his technicians had been trained to install the "same exact" units that C&C sold to Mr. Krehbiel, that those assurances were false, and that Mr. Tattershall knew those assurances were false. For these claims, Mr. Tattershall is not being sued solely based on his status as a member or manager of C&C, but for his own conduct—that is, *his* alleged false statements to Mr. Krehbiel. His liability is therefore not precluded by either Okla. Stat. tit. 12, § 682.B or Okla. Stat. tit. 18, § 2022.

E

The Court next turns to Mr. Krehbiel's claim that "C&C breached its implied duty of good faith and fair dealing by improperly installing the HVAC System and failing to remedy defects and damage caused by the faulty installation and substandard repair work." Dkt. 16 at 14. Under Oklahoma law, tortious breach of the implied duty of good faith and fair dealing requires either

No. 25-cv-668

a "special relationship" that "is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination or risk" or "gross recklessness or wanton negligence on behalf of a party." *Tulsa Athletics, LLC v. Nat'l Premier Soccer League, Inc.*, No. 24-cv-0194-CVE-SH, 2025 WL 2484026, at *12 (N.D. Okla. Aug. 28, 2025) (quoting *Embry v. Innovative Aftermarket Sys. L.P.*, 2010 OK 82, ¶ 7, 247 P.3d 1158, 1160 and *Beshara v. S. Nat. Bank*,[9] 1996 OK 90, ¶ 28, 928 P.2d 280, 288). Mr. Krehbiel does not assert that he had a special relationship with C&C and relies solely on the second basis of "gross recklessness and wanton negligence." Dkt. 22 at 12.

On this point, C&C argues that Mr. Krehbiel has not shown that C&C was grossly reckless or wantonly negligent in its installation and attempted repairs of the HVAC system. Dkt. 20 at 26. Although the Oklahoma Supreme Court has not clearly defined gross recklessness or wanton negligence in the good-faith context, *Beshara* indicates that a plaintiff should plead that the actions of the parties were "intentional, malicious, and in reckless and wanton disregard." 1996 OK 90, ¶ 28, 928 P.2d at 288.

Mr. Krehbiel pleads that C&C's actions were intentional and malicious. Dkt. 16 at 15. He further pleads that C&C was aware of the damage caused by their improper repair and the risk posed to Mr. Krehbiel and still attempted "woefully inadequate installation and substandard repair work." *Id.* at 14-15. Taking these facts are true, as the Court must when considering a motion to dismiss, a jury could find that C&C's actions rose to the level of gross recklessness and wanton negligence. The Court denies the motion to

---

[9] C&C argues that *Beshara* requires both a "special relationship" and "gross recklessness or wanton negligence" for a claim of breach of the implied duty of good faith. Dkt. 20 at 26 (citing *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-cv-0570-CVE-TLW, 2012 WL 314059, at *5 (N.D. Okla. Feb. 1, 2012)). But this Court recently rejected the same argument in *Meyer v. Newrez LLC*, No. 24-cv-43-JDR-CDL, 2025 WL 242255, at *6 (N.D. Okla. Jan. 17, 2025). The Court does so here again for the same reasons.

No. 25-cv-668

dismiss Mr. Krehbiel's tortious breach of the duty of good faith and fair dealing claim.

### F

C&C purports to move to dismiss all claims except those for breach of contract and breach of warranty. Dkt. 20 at 27. But C&C's motion does not mention Mr. Krehbiel's claim that C&C violated the Magnuson-Moss Warranty Act. If C&C intended to move to dismiss the Magnuson-Moss claim, the Court concludes it has failed to "state with particularity the grounds for seeking the order" to do so. Fed. R. Civ. P. 7(b). The Court denies C&C's motion to dismiss Mr. Krehbiel's Magnuson-Moss Warranty Act Claim.

### III

The Court grants Mr. Tattershall's [Dkt. 19] and C&C's [Dkt. 20] motions to dismiss the identity theft claims. The Court denies their motions in all other respects.

DATED this 28th day of July 2026.

_____
JOHN D. RUSSELL
*United States District Judge*